845 So.2d 33 (2002)
Elena Laura Pessino Gomez Del Campo BACARDI, Petitioner,
v.
Elena Gomez del Campo Bacardi de LINDZON, et al., Respondents.
No. SC95348.
Supreme Court of Florida.
February 7, 2002.
Rehearing Denied September 20, 2002.
Hector Formoso-Murias of Formoso-Murias, P.A., Miami, FL, for Petitioner.
Elizabeth J. du Fresne, Daniel E. Gonzalez, and Edwin G. Tores of Steel, Hector & Davis, Stuart J. McGregor and Clinton Losego of Gunster, Yoakley, Valdes Fauli & Stewart, and Richard H. Critchlow and Laren C. Ravkind of Kenny, Nachwalter, Seymour, Arnold, Critchlow & Spector, Miami, FL, for Respondents.
Kelley B. Gelb of Krupnick, Campbell, Malone, Roselli, Buser, Slama, et al., Fort Lauderdale, FL, for The Academy of Florida Trial Lawyers, Amicus Curiae.
QUINCE, J.
We have for review a decision on the following question certified to be of great public importance:
DOES THE TRIAL COURT ABUSE ITS DISCRETION IF IT DISMISSES AN ACTION ON FORUM NON CONVENIENS GROUNDS UNDER KINNEY *34 SYS., INC. v. CONTINENTAL INS. CO., 674 So.2d 86 (Fla.1996), WHEN DISMISSAL REQUIRES THE PLAINTIFF TO REFILE THE CLAIMS IN MORE THAN ONE ALTERNATIVE JURISDICTION?
Bacardi v. Lindzon, 728 So.2d 309, 313 (Fla. 3d DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the following reasons, we answer this question in the negative.

FACTUAL AND PROCEDURAL BACKGROUND
The facts of this case were previously summarized by the Third District Court of Appeal in Bacardi v. Lindzon, 728 So.2d 309 (Fla. 3d DCA 1999), as follows:
Maria Bacardi, Plaintiff's grandmother, established the Cotorro Trust in favor of Elena Gomez Del Campo Bacardi de Lindzon, her daughter; and the Corniche Trust in favor of Luis Bacardi, her son. Plaintiff is a beneficiary of the Cotorro Trust and a contingent beneficiary of the Corniche Trust. The Cotorro Trust was established under the laws of the Cayman Islands, to be principally administered in, and governed by, that jurisdiction's laws. The Corniche Trust was established under, to be principally administered in, and governed by, the laws of Liechtenstein. Plaintiff was involved in legal actions concerning both trusts in their respective jurisdictions. Subsequently, she withdrew from the matters pending in both jurisdictions.
In 1996, Plaintiff, a resident of Spain, filed a multi-count complaint in Dade County against Elena Lindzon, her mother; Jerry Lindzon, her mother's husband; Mariana Pessino Gomez Del Campo Bacardi, her sister; and attorneys Joseph A. Field and Alfred P. O'Hara. Elena Lindzon is not a United States citizen. Both Mr. Lindzon and Mariana Bacardi maintain Florida residences. Mr. Lindzon, an attorney, is a member of the Florida Bar. Neither attorney Field nor O'Hara is a Florida resident or a Florida Bar member. Plaintiff asserts claims of fraudulent alteration of and amendments to the Cotorro Trust, Elena Lindzon's failure to remit to Plaintiff certain payments obtained from the Cotorro Trust, and claims relating to litigation in Liechtenstein concerning the Corniche Trust. In addition to money damages, Plaintiff sought various relief as to the Cotorro Trust.
In January 1997, a clerk's default was entered against Elena Lindzon. Mrs. Lindzon filed a motion to vacate the default; defendants filed various dismissal motions, including motions to dismiss based on forum non conveniens grounds. The court heard the forum non conveniens issue before the other pending motions. [Note 1] The court granted the motion, finding that an adequate alternative forum exists; that the relevant private interest factors favor the alternative forum; and that the public interest factors favor the alternative forum.
[Note 1] The trial court never heard the remaining motions.
Id. at 311. In reaching its decision to dismiss the complaint, the trial court emphasized that Elena Laura Pessino Gomez Del Campo Bacardi (Bacardi), was not a resident or citizen of Florida, but was asking a Florida court to "adjudicate her rights as beneficiary of a non-Florida trust, established by a non-Florida lawyer, administered by a non-Florida trustee in a foreign country pursuant to non-Florida law and having no trust assets in the State of Florida." Bacardi, 728 So.2d at 312.
The Third District affirmed the trial court in part, upholding the trial court's *35 ruling that the suit should be dismissed to the alternative fora. The Third District also reversed the trial court's decision in part, ruling that the malpractice claim against Jerry Lindzon, a Florida attorney, could be heard in a Florida court and that the dismissal of the complaint as to Elena Lindzon flowing from a default entered when she failed to reply to the complaint was improper. The Third District then certified the question we now address.

DISCUSSION
The question certified by the Third District as being of great public importance involves a further refinement of this Court's forum non conveniens jurisprudence:
DOES THE TRIAL COURT ABUSE ITS DISCRETION IF IT DISMISSES AN ACTION ON FORUM NON CONVENIENS GROUNDS UNDER KINNEY SYS., INC. v. CONTINENTAL INS. CO., 674 So.2d 86 (Fla.1996), WHEN DISMISSAL REQUIRES THE PLAINTIFF TO REFILE THE CLAIMS IN MORE THAN ONE ALTERNATIVE JURISDICTION?
The Third District affirmed the trial court's dismissal of the action on forum non conveniens grounds even though the entire case could not be dismissed to one forum. The court opined that the action brought in Florida involved two separate trusts with separate and distinct claims pertaining to each. Thus, the claims as to each trust could be severed and dismissed to the forum with jurisdiction over that particular trust. We agree with the Third District's holding that the trial court did not abuse its discretion in dismissing the Bacardi case to two separate alternative fora, and with its finding that the "whole case" language used in Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86 (Fla.1996), means one set of legally related facts, thus implicitly severing Bacardi's claims as to each foreign trust and dismissing those sets of claims to two distinct fora.

THE KINNEY DOCTRINE
In Kinney, this Court adopted the four-step analysis for forum non conveniens issues originally outlined in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and currently codified in Florida Rule of Civil Procedure 1.061.[1] We said:
As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. [2] Next, the trial judge must consider all relevant factors of private interest, weighing in *36 the balance a strong presumption against disturbing plaintiffs' initial forum choice. [3] If the trial judge finds this balance of private interest in equipoise [the advantages and disadvantages of the alternative forum will not significantly undermine or favor the "private interests" of any particular party, as compared with the forum in which suit was filed] or near equipoise, he must then determine whether or not factors of public interest tip the balance in favor of a trial in [another] forum. [4] If he decides that the balance favors such a... forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.
Kinney, 674 So.2d at 90 (quoting Pain v. United Technologies, Corp., 637 F.2d 775, 784-85 (D.C.Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981)) (some bracketed language added).
The certified question concerns the first prong of the Kinney analysis which requires that an adequate forum exists with jurisdiction over the whole case. As the district court did implicitly, we equate the term whole case with a distinct cause of action. We have previously stated, "Although no thoroughly satisfactory definition of a cause of action has been laid down by the authorities, it is generally conceded under the modern view that a cause of action is the right which a party has to institute a judicial proceeding." Shearn v. Orlando Funeral Home, Inc., 88 So.2d 591, 593 (Fla.1956). Other Florida courts have defined a cause of action as "some particular legal right of plaintiff against defendant, together with some definite violation thereof which occasions loss or damage." Soowal v. Marden, 452 So.2d 625, 626 (Fla. 3d DCA 1984) (quoting Luckie v. McCall Mfg. Co., 153 So.2d 311, 314 (Fla. 1st DCA 1963)).
While several causes of action may be joined in a single complaint, such joinder does not negate the fact that the plaintiff could have brought these claims in separate complaints. See Fla. R. Civil Proc. 1.110(g). The operative question is whether the same facts are necessary to prove each cause of action. See Cole v. First Development Corp. of America, 339 So.2d 1130 (Fla. 2d DCA 1976). The facts necessary to establish Bacardi's rights under the trust, the violation of those rights, and any ensuing damages as to each trust are not identical.
In this case, Bacardi had two causes of action, one involving her rights and damages under the Cotorro Trust and the other involving her rights and damages under the Corniche Trust. She joined these two causes of action concerning the two separate trusts[2] in one complaint and *37 named several defendants, claiming they had all participated in a conspiracy to defraud Bacardi of her interests in those trusts.[3] As to the Corniche trust, Bacardi charged the defendants fraudulently induced the grantor to amend the trust in order to terminate her monetary beneficial interest completely. As to the Cotorro trust, Bacardi alleged the defendants converted the trust assets thereby significantly reducing her original interest in the trust. The mere fact that Bacardi filed her claims involving each trust in the same complaint does not make the individual claims one cause of action. The two trusts were established in different places, for the benefit of different persons, with different primary and contingent beneficiaries. Bacardi herself has different rights and interests under each of the trusts. Of necessity, the facts which will prove or disprove her claims will also differ with each trust. Thus, under the facts of this case, the whole cause within the meaning of Kinney means the cause of action pertaining to each trust individually.
Additionally, the first prong of the Kinney test also requires a determination that the defendant is amenable to process in another jurisdiction. See Kinney, 674 So.2d at 90; Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-507, 67 S.Ct. 839, 91 L.Ed. 1055. The Fourth District Court of Appeal addressed this component in its decision in Smith Barney, Inc. v. Potter, 725 So.2d 1223 (Fla. 4th DCA 1999). In Smith Barney, four investors joined in a declaratory judgment action against national securities *38 dealer Smith Barney, seeking a declaration that the arbitrators rather than the courts should determine whether their claims were time-barred. Three of the claimants were nonresidents. In analyzing this first prong of Kinney, the Fourth District relied on language from Kinney indicating an alternative forum is not truly alternative if the defendants are not amenable to service of process in that forum.
As with the defendants in this case, the plaintiffs in Smith Barney made no argument that service on the defendants could not be perfected in the other forum. Additionally, in finding that these claims should have been dismissed in favor of a more convenient forum, the forum where the plaintiffs resided, the Fourth District emphasized that the claimants had little connection with Florida and that both private and public interests would be better served in a forum where the claimants had a residential connection. It is clear from the existence of ongoing litigation in both Cayman and Liechtenstein involving the same trusts that are at issue in the case before us that both the plaintiff and the defendants have appeared in those actions with service of process being perfected or agreed upon.
The Fourth District Court of Appeal in Ciba-Geigy Ltd. v. Fish Peddler, Inc., 691 So.2d 1111 (Fla. 4th DCA 1997), was confronted with a situation similar to the case before us,[4] and reached a similar conclusion to that reached here. In Ciba-Geigy the Fourth District addressed a breach of contract suit filed in Florida against a Florida company by Ecuadoran companies based on torts that occurred in Ecuador. A Florida company, The Fish Peddler, sued one of its suppliers, The Pink Star, in Florida. The defendant then filed a third-party complaint against an Ecuadoran corporation, Lango Taura, S.A., for indemnification and breach of contract; Lango Taura was to supply Pink Star with shrimp, but was unable to do so as a result of the noncompliance of suppliers upon whom it depended. Lango Taura in turn sued several other corporations, including Ciba Geigy, for contribution, negligence, and products liability. Several other shrimp operations also sued Ciba Geigy as well as the other corporations sued by Lango Taura. These latter complaints charged that the chemicals manufactured by the Swiss and German companies were later used by banana growers in Ecuador and seeped into the rivers killing off the shrimp supply. In reversing the trial court's denial of defendants' forum non conveniens motion to dismiss, the Fourth District found the trial court improperly applied the Kinney factors giving a strong presumption to the plaintiff's choice of forum.
The Fourth District ultimately found no identity of legal or factual issues between *39 the contract action brought by Fish Peddler and Pink Star and the twenty-eight tort actions brought by the Ecuadoran shrimp farmers. It also found that the Ecuadoran shrimp farmers were only able to maintain Florida as their choice of forum because Lango-Taura, the Ecuadoran company that Pink Star had joined in a third-party complaint, stipulated to jurisdiction in Florida. While the trial court determined it would be more convenient for the parties to litigate all the claims in one country instead of two, the Fourth District differed. The Fourth District found the trial court had abused its discretion since the "whole case" involving the fish farmers could properly be brought in Ecuador, while the initial case between Fish Peddler and Pink Star, two Florida corporations, could be litigated in Florida. In the end, the Fourth District decided dismissal was proper although one of the parties, Lango-Taura, would likely need to litigate its claims in both Florida and Ecuador.
In this case, respondents had already consented to jurisdiction or had been properly served in both the Cayman Islands and Liechtenstein, as evidenced by their prior involvement in the ongoing litigation in those two countries. The record shows that the litigation in both places concerned the same allegations of invalid, fraudulently obtained trust amendments and mishandling of trust assets raised in the complaint at the center of this suit. See, e.g., Kinney, 674 So.2d at 90.
Bacardi relies on Madanes v. Madanes, 981 F.Supp. 241 (S.D.N.Y.1997), to support her argument that all of the claims should be heard in one forum. Such reliance is misplaced because this case differs in several respects. Madanes involved a family dispute between siblings, in which a sister alleged her brothers fraudulently diverted funds from family investments to which she had been named a beneficiary by her deceased father, a wealthy Argentinian businessman. Suit was filed against Madanes' brothers, the family attorney and other corporate defendants alleging Racketeer Influenced and Corrupt Organizations Act (RICO) violations along with other New York common law and statutory claims. The complaint explicitly outlined numerous transactions that occurred between New York and Argentina and other countries in furtherance of the alleged fraudulent scheme. In Madanes, petitioner concretely supported her allegations of fraud and the need for a New York court to exert personal and subject matter jurisdiction over her complaint by describing in detail her brothers' activities in and through New York. As that court found,
[T]he Complaint identifies the specific roles played by each Defendant, including, for instance, allegations that Miguel [a brother] directed Ortoli [the family attorney] regarding Swansea, [a Panamanian company formed by the decedent that invested several million dollars in a New York partnership that purchased real estate in New York; when this property was sold, the New York partnership diverted the funds to a secret account in Switzerland and never gave plaintiff her share], Pablo [another brother] set up Dolmy and Procida [Swiss accounts], and Leiser [another brother] participated in the scheme to defraud Ms. Madanes and caused the transmittal of wires and letters in furtherance of such scheme. The specific roles played by each corporate Defendant are also adequately delineated....
Madanes, 981 F.Supp. at 254. Ultimately, the United States District Court for the Southern District of New York denied respondents' forum non conveniens motions for dismissal.
*40 Unlike in Madanes, the connections between Bacardi and Florida, as well as the acts constituting the alleged fraud on the trusts and Florida, are tenuous at best. As the Third District found, both private and public interests would be best served by litigating the claims regarding each trust in their principal place of administration.[5] For these reasons, we uphold the trial court's severance of these claims under the Kinney doctrine. The claims relevant to the Cotorro trust, those related to the Corniche trust, and the malpractice claims against Attorney Lindzon are all separate causes of action which can be more appropriately litigated in the Cayman Islands, Liechtenstein, and Florida, respectively. Therefore, we answer the certified question in the negative.

CONCLUSION
We approve the Third District's holding that dismissal of an action under Kinney to more than one alternative fora is permissible where the case consists of distinct claims that could have been severed and adjudicated separately.
It is so ordered.
WELLS, C.J., and SHAW, and HARDING, JJ., concur.
PARIENTE, J., concurs in result only with an opinion, in which ANSTEAD and LEWIS, JJ., concur.
PARIENTE, J. concurring in result only.
Given the fact that Bacardi's two causes of action are separate and unrelated, I agree with the majority's holding that the trial court did not abuse its discretion in dismissing this case even though the result is to require Bacardi to refile the case in two separate foreign jurisdictions. However, I concur in result only because of my concern that the Third District's certified question is overly broad in that it asks generally if a trial court abuses its discretion if it dismisses an action on forum non conveniens grounds under Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86 (Fla.1996), when dismissal requires the plaintiff to refile the claims in more than one alternative forum. See Bacardi v. Lindzon, 728 So.2d 309, 313 (Fla. 3d DCA 1999). In my view, the answer to that broad question is that it generally would be an abuse of discretion to dismiss an action on the basis of forum non conveniens when to do so would require a plaintiff to refile interrelated claims in more than one alternative foreign jurisdiction.
In this case, Bacardi had two separate and unrelated causes of action. Although both claims involve the same general subject matterthat is, trust lawBacardi's claims involve her rights under two completely separate and unrelated trusts. As the majority in this case correctly notes:
The two trusts were established in different places, for the benefit of different *41 persons, with different primary and contingent beneficiaries. Bacardi herself had different rights and interests under each of the trusts. Of necessity, the facts which will prove or disprove her claims will also differ with each trust.
Majority op. at 37. Therefore, in this case there was a misjoinder of the two causes of action involving separate trusts, and thus it was entirely appropriate that the plaintiff would have to pursue these unrelated causes of action in separate fora.
As this Court long ago explained: "For separate and distinct wrongs, not connected by the ligament of a common purpose, actual or implied by law, the wrongdoers are liable only in separate actions and not jointly in the same action." Smith v. Coleman, 100 Fla. 1707, 132 So. 198, 200 (1931). Furthermore, several district courts have noted:
[M]ultifariousness occurs when distinct and disconnected subjects, matters, or causes are joined in the same complaint or when parties, either as defendants or plaintiffs, who have no common interest in the subject matter of the litigation or connection with each other insofar as the issues in the litigation are concerned join in the same suit.
Intercapital Funding Corp. v. Gisclair, 683 So.2d 530, 533 n. 2 (Fla. 4th DCA 1996) (citing Carbonell v. American Int'l Pictures, Inc., 313 So.2d 417, 418 (Fla. 3d DCA 1975)). See generally Fla. R. Civ. Pro. 1.250(a) ("Misjoinder of parties is not a ground for dismissal of an action. Any claim against a party may be severed and proceeded with separately.").
Therefore, although I agree with the majority's ultimate holding that the trial court did not abuse its discretion, I emphasize that the reason the trial court did not abuse its discretion in this case stems from the fact that there was a misjoinder of two unrelated causes of actions.
ANSTEAD and LEWIS, JJ., concur.
NOTES
[1] Florida Rule of Civil Procedure 1.061, governing choice of forum, states:

(a) Grounds for Dismissal. An action may be dismissed on the ground that a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida when:
(1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;
(2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;
(3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and
(4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.
The decision to grant or deny the motion for dismissal rests in the sound discretion of the trial court, subject to review for abuse of discretion.
[2] Prior to the litigation in the United States, Bacardi was involved in legal proceedings in the Cayman Islands, Liechtenstein, and Switzerland concerning both trusts. On April 7, 1995, she filed an action in Cayman alleging the impropriety of amendments to the Cotorro Trust and attacking subsequent invasions of the corpus of the trust. Soon thereafter, the trustee filed a summons in Cayman requesting that Bacardi be ordered to submit an affidavit particularizing her claims. On July 31, 1996, Bacardi filed a cross-summons seeking a determination of the validity of several of the amendments to the Cotorro trust. According to the record, Bacardi participated in the Cayman action for a total of two years.

On December 20, 1996, a Cayman judge entered an order to temporarily enjoin Bacardi from proceeding with her Florida action, also initiated in 1996, until a full hearing could be held in Cayman. The judge issued this order upon finding that Bacardi's Florida complaint alleged the same issues as her original complaint in Cayman. On December 23, 1996, Bacardi wrote a letter to the clerk of court in Cayman attempting to withdraw her original summons. From January 6-8, 1997, the Cayman court held a full hearing on this withdrawal request, although Bacardi failed to appear and did not receive permission to withdraw. On January 17, 1997, that court entered its ruling and orders finding: (1) Cayman was the proper forum for Bacardi's complaint; (2) the corpus of the Cotorro trust was based in the Bahamas and in Cayman; (3) Bacardi would be bound by the Cayman action; and (4) the filing of the Dade County action was an improper attempt at forum shopping.
On June 2, 1997 the Cayman court entered a final judgment on Bacardi's original petition finding: (1) finding Bacardi was still a party to the Cayman action; (2) the Cotorro trust was valid and distributions of those trust assets were proper; and (3) under Cayman law, Bacardi's claims of breach of trust and fiduciary duty by the respondents were unfounded.
In addition to the litigation in Cayman, Bacardi also participated in litigation concerning the Corniche trust in Liechtenstein during the 1980s. In that action, Bacardi challenged the pledging by the trustee of a significant portion of the Corniche trust assets. However, in February of 1995, legal proceedings were commenced to restore the beneficial interest of Elena Lindzon's daughters (including Bacardi and her sister, defendant Mariana Bacardi). That litigation was still pending when the Florida action was filed.
[3] Bacardi's claims include: counts 1-6, breach of fiduciary duty against Elena Lindzon, Jerry Lindzon, Mariana Bacardi, Joseph Field and Alfred O'Hara, respectively; count 7breach of trust against Jerry and Elena Lindzon and Mariana Bacardi as de facto trustees; count 8breach of duty of co-trustee against Mariana and Jerry; count 9 breach of duty to inform and account to beneficiaries against Elena, Jerry and Mariana; count 10unjust enrichment against Elena Lindzon; count 11tortious interference with a gift of devise against all respondents; count 12imposition of a constructive trust against Elena Lindzon; count 13imposition of a resulting trust against Elena Lindzon; count 14promissory estoppel against Elena Lindzon; counts 15 and 16professional malpractice against Field and Jerry Lindzon, respectively; count 17conversion against Elena Lindzon and Jerry Lindzon; count 18negligent misrepresentation against all respondents; count 19fraud in the inducement against all respondents; counts 20 and 21intentional infliction of emotional distress against Elena Lindzon and Jerry Lindzon, respectively; count 22 intentional interference with an expectancy against all respondents; count 23civil conspiracy against all respondents.
[4] See Calvo v. Sol Melia, S.A., 761 So.2d 461 (Fla. 3d DCA 2000). In Calvo, the district court affirmed the dismissal of a suit brought by Spanish parents of a Spanish swimmer who was injured when struck by a boat while swimming in the Dominican Republic. Since the contacts with Florida were few (e.g., although the daughter was briefly treated at Miami hospital and was later taken to Spain for additional care, the resorts between which she was swimming were Dominican; of the five subsidiaries of the parent corporations only two had offices in Miami and these committed no acts leading up to the accident; and the pilot of the boat, the police investigators, and the insurance companies were all Dominican), litigation would be appropriate in either Spain or the Dominican Republic. See also Pearl Cruises v. Bestor, 678 So.2d 372 (Fla. 3d DCA 1996) (California citizens injured in a car accident in Vietnam during an excursion arranged by their Italian cruise liner could not maintain suit in Florida simply because they had sued four agents employed by the Italian company in Florida; suit in Italy would be more appropriate, but if plaintiffs found Italy unattractive, they could file elsewhere).
[5] Florida statutory law also supports this conclusion. Section 737.101(1), Florida Statutes (1995), states: "Unless otherwise designated in the trust agreement, the principal place of administration of a trust is the trustees' usual place of business where the records pertaining to the trust are kept or, if he [or she] has no place of business, the trustees' residence." In this case, the trust instruments clearly indicate that the trusts should be administered in the Cayman Islands and Liechtenstein. Moreover, section 737.201, Florida Statutes, provides that over an objection, courts can only entertain proceedings related to foreign trusts if jurisdiction can be asserted over all defendants. If not, the principal place of administration will serve as the default jurisdiction. In this case, respondents have objected to Florida jurisdiction; therefore, the country designated by each trust instrument must be given deference.